## A03A0301. JOHN CRANE, INC. v. JONES.
### (586 SE2d 26)

MIKELL, Judge.

Robert H. Jones filed a negligence and product liability action in 1996 against John Crane, Inc. and seven others,[1] alleging that he contracted mesothelioma as a result of occupational exposure to asbestos dust from products manufactured by the defendants. Jones died in 1997, and Laila A. Jones, his surviving spouse and executrix of his estate, was substituted as plaintiff. She amended the complaint to add claims for wrongful death and loss of consortium. All

---

[11] See *In re Grand Jury Investigation (Schroeder),* supra at 1227.

[1] The other named defendants were Owens-Corning Fiberglas Corporation, Garlock, Inc., Anchor Packing Company, Pittsburgh Corning Corporation, Rock Wool Manufacturing Company, Inc., Scapa, Inc., and A. W. Chesterton Company.

defendants except Crane were either dismissed or filed bankruptcy before trial, and the jury returned a verdict for $1,975,000 against Crane. The trial court denied Crane's motion for judgment notwithstanding the verdict (j.n.o.v.) or a new trial, and Crane appeals. We affirm.

1. Crane first argues that the trial court erred in refusing to charge the jury that Mrs. Jones could not recover unless her husband's exposure to Crane's products was a "substantial contributing factor" to his injuries.[2]

The court charged the jury in pertinent part as follows:

Proximate cause requires a showing by the plaintiff that the defendant's negligence was a factor in bringing about the loss. Where several negligent acts may have produced plaintiff's injury, to be considered the proximate cause an individual defendant's tortious conduct must constitute a contributing factor in bringing about the plaintiff's damages. Now, to hold an individual defendant liable, the plaintiff must introduce sufficient evidence to allow a jury to find that more than likely, their exposure to a particular defendant's product was a factor in producing their injuries.

The record shows that the parties had agreed to this charge except for the omission of the word "substantial."[3] The trial court decided to omit the word for several reasons. First, the court noted that "substantial" had not been charged in *John Crane, Inc. v. Wommack*,[4] a similar case tried in Fulton County Superior Court and affirmed on appeal, although the charge was not an issue on appeal. In addition, the court was concerned that the jury would have no definition of substantial, and Crane did not offer one. Finally, the court reasoned that no one could say that any defendant contributed "substantially" more than the other, especially since so far as the jury was concerned, there was only one defendant.

During deliberations, the jury sent a note to the judge, asking the court to "clarify the legal definition of contributing factor, cause. Does the law say that the possibility that something is a contributing cause is sufficient to determine that it is a contributing cause?" The

---

[2] Contrary to Mrs. Jones's argument that Crane failed to preserve this issue for appeal, defense counsel specifically objected to the trial court's failure to use the word "substantial" in the charge on proximate cause. No more is required. See *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 235-236 (2) (547 SE2d 637) (2001).

[3] The charge was given in *Goodman v. Nat. Gypsum Co.*, Case No. E-68314 (Fulton Super. Ct. 1999), which was not appealed. A similar charge was given in *Hoffman v. USX Corp.*, Case No. 1:98-CV-745-TWT (N.D. Ga. 2000).

[4] 227 Ga. App. 538 (489 SE2d 527) (1997).

court reread the entire charge on concurrent negligence and proximate cause to the jury. In addition, the court stated:

> Now, I cannot give you a legal definition of contributing factor as you request here. That's something you just have to use your own common knowledge what contributing means. You know. There's no set-out legal description that I can give you on that. In many cases you just have to use your own personal knowledge, your experience in life to know what something means and go from there.

> We sympathize with the trial court's dilemma and find no error.

> Although many legal scholars have attempted to lay down a single standard to determine proximate causation, . . . no satisfactory universal formula has emerged. Instead, proximate cause is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other.[5]

Crane argues the court confused and misled the jury into believing that it could award damages for a de minimus exposure to asbestos. We do not agree. The court correctly charged the law of joint tortfeasors as it has stood since 1921.

> Where the injury is the result of the concurring negligence of two or more parties, they may be sued jointly or severally. . . . It is well settled that an action may be maintained against two joint tort-feasors whose negligence contributes to produce an injury, even though the same obligations do not rest upon each with respect to the person injured. It is sufficient to support a recovery if the negligence of both be a contributing cause. . . .[6]

---

[5] (Citations and punctuation omitted.) *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569-570 (398 SE2d 16) (1990). Accord *Zwiren v. Thompson*, 276 Ga. 498 (578 SE2d 862) (2003).

[6] (Citation and punctuation omitted.) *Gooch v. Ga. Marble Co.*, 151 Ga. 462, 463-464 (107 SE 47) (1921). Accord *Gilson v. Mitchell*, 131 Ga. App. 321, 326-327 (205 SE2d 421) (1974). See also *Atlanta & West Point R. Co. v. Armstrong*, 138 Ga. App. 577, 581 (6) (227 SE2d 71) (1976) (no error in refusing to charge "contributing factor" where principle substantially covered).

Moreover, contrary to Crane's argument, the trial court did not refuse to clarify the jury's confusion.[7] Rather, the court acted properly in response to the jury's written inquiry by fully recharging on all applicable principles.[8]

In addition, we reject Crane's argument that *Polston v. Boomershine Pontiac-GMC Truck*[9] and *Fulmore v. CSX Transp.*[10] mandate its requested jury instruction. In *Polston*, our Supreme Court ruled as follows: "In an enhanced injury or crashworthiness case, Georgia law places on the plaintiff the burden of proving that a design defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision."[11] The case at bar is not an enhanced injury case. *Polston*, therefore, is inapposite.

*Fulmore* was a panel decision rendered on appeal of 18 related negligence actions brought under the Federal Employers' Liability Act (FELA) by railroad employees who contracted asbestosis.[12] In reversing in part the grant of summary judgment to CSX, we noted that "[u]nder the FELA, and Georgia law, it is only necessary that defendant had significantly contributed to plaintiff's injury in order to be liable therefor."[13] As the sole authority for this proposition, we quoted a New Jersey case, *Grassis v. Johns-Manville Corp.*,[14] as follows:

> There is no requirement in the law that a single cause be found and proven. All that is required is that the plaintiff show that a defendant's conduct or defective product was a proximate cause of the condition, i.e., a substantial factor in bringing the condition about. . . . We do not tell a jury that a significant factor must be one that is 5%, 15%, 30% or 40%; we merely tell a jury that it must be "significant."[15]

Because it is a FELA action, *Fulmore* is inapposite. *Grassis*, in turn, is factually distinguishable. The plaintiff in *Grassis* underwent surgery for colon cancer in 1974, and the cancer had not recurred

---

[7] Compare *Matthews v. Taylor*, 155 Ga. App. 2, 4 (2) (270 SE2d 247) (1980) (trial court reversibly erred in merely referring jury to instructions already given when jury expressed confusion).

[8] See *Cannon v. State*, 230 Ga. App. 440, 442 (2) (496 SE2d 330) (1998).

[9] 262 Ga. 616 (423 SE2d 659) (1992).

[10] 252 Ga. App. 884 (557 SE2d 64) (2001), disapproved in part, *Norfolk & Western R. Co. v. Ayers*, 538 U. S. 135, n. 11 (123 SC 1210, 1220, 155 LE2d 261) (2003).

[11] *Polston*, supra at 618-619.

[12] *Fulmore*, supra at 884-885.

[13] Id. at 894.

[14] 248 N.J. Super. 446 (591 A2d 671) (1991).

[15] *Fulmore*, supra at 894, citing *Grassis*, supra at 457.

before trial. The appeal was decided in 1991. The issue was whether the plaintiff's occupational exposure to asbestos dust was a causative factor. A substantial verdict was overturned. The appeals court held that upon retrial, the plaintiff would be required to show to a "reasonable degree of medical probability" that exposure to asbestos was a cause of his colon cancer.[16]

Unlike in *Grassis*, here there was overwhelming evidence that exposure to asbestos caused the injury.[17] Jones's treating physician, Phillip Richard Saleeby, M.D., a pulmonologist, testified that Jones died as a result of mesothelioma, a malignant tumor of the pleura caused by asbestos inhalation. Dr. Saleeby further testified that virtually all reported cases of mesothelioma appear in patients who have been occupationally exposed to asbestos. Crane's appellate briefs do not refer this Court to any evidence disputing this testimony. Rather, Crane essentially complains that Mrs. Jones failed to establish that Crane's packing had a sufficient *amount* of respirable asbestos to constitute a contributing factor to Jones's mesothelioma.[18] Adding the word "substantial" would have unfairly prejudiced Mrs. Jones. We therefore hold that the jury was properly charged on proximate cause, and Crane is not entitled to a new trial.

2. Crane next contends that the trial court reversibly erred in refusing to permit two of its expert witnesses, Frederick Toca, Ph.D., an industrial hygienist, and Henry Buccigross, a chemical engineer, to testify to asbestos fiber counts on Crane packing that had been performed by an outside laboratory. We disagree. The court correctly determined that testimony concerning the actual counts was inadmissible hearsay absent a witness from the laboratory or a report that complied with OCGA § 24-3-18. "The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts *as proved by other witnesses*."[19] However, "not even an expert can give an opinion based upon reports which have been prepared by others and which are not in evidence."[20] In any event, both witnesses were per-

---

[16] *Grassis*, supra.

[17] Compare *Blackston v. Shook & Fletcher Insulation Co.*, 764 F2d 1480, 1482 (11th Cir. 1985) (in asbestos cases, proximate cause requires proof of exposure to manufacturers' products), with *Eagle-Picher Indus. v. Balbos*, 326 Md. 179, 207-211 (604 A2d 445) (1992) (substantial-factor causation test applied to "bystanders," i.e., shipyard employees who did not work directly with asbestos products).

[18] At trial, Crane stipulated that Jones died from mesothelioma but maintained that Crane's products did not cause or contribute to the development of the disease.

[19] (Emphasis supplied.) OCGA § 24-9-67.

[20] (Citation omitted.) *Fidelity &c. Ins. Co. v. CIGNA/Pacific Employers Ins. Co.*, 180 Ga. App. 159, 162 (1) (348 SE2d 702) (1986).

mitted to give opinion testimony based on the counts performed by the laboratory. The trial court followed the correct procedure.[21]

3. Crane next contends that the trial court erred in permitting Mrs. Jones to introduce, over objection, evidence that Crane put warning labels on its packing in 1983 or 1984.

> Evidence of subsequent remedial measures generally is inadmissible in negligence actions, because the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence. However, there are several exceptions to that rule, such as when the subsequent repair, change, or modification tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, . . . and so on.[22]

Contrary to Crane's assertion, the evidence at issue was not inadmissible evidence of subsequent remedial measures.[23] In his videotaped deposition, Jones testified that he was exposed to products containing asbestos, including Crane's products, until his retirement in 1987. Arthur Leonard Frank, M.D., an occupational medicine specialist, testified that each and every occupational exposure to asbestos would have contributed to Jones's development of mesothelioma, including exposures after 1980. Thus, the jury could have found that Jones was exposed to Crane's products until 1987, and evidence of warning labels placed on those products in 1983 could not, by definition, constitute evidence of subsequent remedial measures. In any event, even if the evidence fell within that category, it would have been admissible to show Crane's knowledge that its packing contained asbestos. Earlier, on cross-examination, Crane had asked Barry Castleman, Sc.D., an environmental consultant, the following question: "You can't testify what John Crane would have known at any point in time . . . , can you?" "Having opened the door, [Crane] cannot complain that plaintiff[ ] entered."[24]

---

[21] *Joiner v. Lane*, 235 Ga. App. 121, 126 (4) (508 SE2d 203) (1998) (expert testimony which is based on hearsay is admissible; only the weight of the evidence is affected).

[22] (Citations and punctuation omitted.) *Royals v. Ga. Peace Officer Standards &c. Council*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996).

[23] We note that such evidence is admissible in actions asserting both strict liability and negligence theories of recovery. *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 882-883 (4) (447 SE2d 302) (1994), overruled on other grounds, *Webster v. Boyett*, 269 Ga. 191, 196 (2) (496 SE2d 459) (1998). However, the jury must be instructed as to the proper use and limits of the evidence, and it does not appear that was done in this case.

[24] (Citation omitted.) *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 160 (3) (392 SE2d 897) (1990).

4. Finally, Crane claims that the trial court erred in denying its motion for j.n.o.v. because Mrs. Jones produced no evidence that Crane's packing released respirable asbestos fibers to which her husband was exposed. Crane faces an insurmountable hurdle in this regard.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for [j.n.o.v.] will not be disturbed.[25]

James Millette, Ph.D., an environmental scientist, testified that he analyzed Crane's packing and determined that it contained friable, chrysotile asbestos fibers, such that any kind of abrasion on the end of the material would release some fibers. Yasunosuke Suzuki, M.D., a pathologist, testified that he examined a biopsy of Jones's lung and that the pleura contained only chrysotile fibers. Apparently, this finding was significant because generally amosite fibers are discovered. Jones's videotaped deposition shows he was exposed to asbestos from 1945, when he was hired by Brunswick Pulp & Paper, until his retirement on disability in 1987. Jones testified that packing was used throughout the mill to pack pumps on all types of machinery and that particles were released whenever he cut into the packing. Jones recalled that Crane was one of the manufacturers of products containing asbestos to which he was exposed at the mill. This is evidence from which a jury could find that Crane's packing released respirable asbestos fibers to which Jones was exposed throughout his 42-year career at the mill. Crane's motion for j.n.o.v. was properly denied.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JULY 2, 2003 —
RECONSIDERATION DENIED JULY 29, 2003 — 

---

[25] (Citation and punctuation omitted.) *John Crane, Inc.*, supra at 538 (2).

*Hawkins & Parnell, Ollie M. Harton, Jennifer P. Treanor,* for appellant.
*Lane & Gossett, Roger B. Lane,* for appellee.